IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Willie J. Owens, #219822, ) | C/A NO. 6:06-1700-CMC-WMC |
| ) | |
| Petitioner, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| ) | |
| George Hagan, Warden of Allendale ) | |
| Correctional Institution; State of South ) | |
| Carolina; and Attorney General of the ) | |
| State of South Carolina, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

This matter is before the court on Petitioner's *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(c), DSC, this matter was referred to United States Magistrate Judge William M. Catoe for pre-trial proceedings and a Report and Recommendation. On January 25, 2007, the Magistrate Judge issued a Report recommending that Respondents' motion for summary judgment be granted and the petition be dismissed as untimely. The Magistrate Judge advised Petitioner of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if he failed to do so. Petitioner filed objections on February 12, 2007.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the

recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, and Petitioner's Objections, the court agrees that this Petition should be dismissed as untimely. However, the Magistrate Judge's Report is lacking detail and analysis which is relevant and important to this court's decision. Therefore, this court sets out the full history of this matter, and includes an analysis of whether Petitioner is entitled to an equitable tolling of the statute of limitations period.

Petitioner is currently incarcerated in the South Carolina Department of Corrections pursuant to orders of commitment from the Marion County Clerk of Court. Petitioner was indicted in 1995 for two counts of first degree criminal sexual conduct and two counts of criminal sexual conduct with a minor. Petitioner proceeded to trial and was represented by attorney John Gaines. At the conclusion of the trial Petitioner was found guilty on all charges, and on June 1, 1995, Petitioner was sentenced to 30 years' imprisonment on each count of first degree criminal sexual conduct, and 20 years' imprisonment on each count of criminal sexual conduct with a minor, with all sentences to be served concurrently. Petitioner filed a timely notice of intent to appeal.

The South Carolina Court of Appeals affirmed Petitioner's conviction on February 25, 1998, and denied Petitioner's *pro se* motion for reconsideration on April 23, 1998. Petitioner did not seek certiorari review of this decision in the South Carolina Supreme Court. The South Carolina Court of Appeals issued the remittitur on June 4, 1998.

On June 11, 1998, Petitioner filed an Application for Post-Conviction Relief (PCR) in the state court, raising eleven grounds for relief. Respondents made a return to the PCR application, and

an evidentiary hearing was held on June 16, 1999. On August 4, 1999, the state circuit court issued an order denying the PCR application in its entirety. Petitioner, through counsel, filed a timely petition for writ of certiorari in the South Carolina Supreme Court. The South Carolina Supreme Court denied the petition on August 8, 2001, and issued the remittitur on August 28, 2001.

On January 18, 2002, Petitioner filed a petition for writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254 (the "2002 Petition"), *Owens v. State of South Carolina, et al.*, D.S.C. Civil Action No. 6:02-261-CWH-WMC.[1] On April 3, 2002, the same Magistrate Judge who is currently assigned to this matter issued a Report recommending that the 2002 Petition be dismissed without prejudice because it contained both exhausted and unexhausted claims (a so-called "mixed" petition).[2] The Magistrate Judge cited *Rose v. Lundy*, 455 U.S. 509 (1982), as the controlling Supreme Court precedent which dictated the dismissal of the 2002 Petition.

On February 24, 2004, almost two full years later, C. Weston Houck, the district court judge to whom the 2002 Petition was assigned, issued an order adopting the Report of the Magistrate Judge and dismissing the 2002 Petition without prejudice.

On April 5, 2004, Petitioner filed a second PCR application in South Carolina state court, raising seven claims for relief. Respondents made a return to this second PCR application, moving to dismiss it as successive and time-barred. A hearing was held in state court on November 15, 2005. On December 28, 2005, the state court issued its written order dismissing the second PCR as

---

[1] The Petition was entered onto the court's docket on February 6, 2002. However, Petitioner gave his petition to prison officials on January 18, 2002. Therefore, it is deemed filed as of January 18, 2002. *Houston v. Lack*, 487 U.S. 266 (1988).

[2] This court does not have a copy of this 2002 petition as the record of this matter has been archived and it was filed before this court began keeping all records electronically.

successive and time-barred. Petitioner filed a timely appeal from this order. On February 10, 2006, the South Carolina Supreme Court dismissed the notice of appeal, and on March 9, 2006, issued the remittitur.

On June 1, 2006, Petitioner filed the instant § 2254 petition in this court (the "2006 Petition"), raising four grounds for relief.[3] Respondents made their return to the 2006 Petition on September 28, 2006, and the Magistrate Judge issued his Report and Recommendation on January 25, 2007.

Neither Respondents nor the Magistrate Judge mention the previously-filed 2002 Petition and its potential effect on the current 2006 Petition, even though Petitioner attached a copy of the docket sheet from the 2002 Petition to the 2006 Petition which was served on Respondents. To be sure, Respondents were not served with the 2002 Petition and made no appearance in that matter, yet Respondents were on notice regarding the 2002 Petition when served with the 2006 Petition.

As noted by the Magistrate Judge, this matter is controlled by the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"). Under the AEDPA, the limitation period for filing § 2254 petitions runs from the latest of:

> (d)(1)(A) the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from making a motion by such State action;

---

[3]The Petition was received by the court on June 5, 2006, and was docketed as of that date. However, Petitioner gave his petition to prison officials on June 1, 2006. Therefore, it is deemed filed as of June 1, 2006. *Houston v. Lack*, 487 U.S. 266 (1988).

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2)The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.

Because Petitioner's conviction became final *after* the passage of the AEDPA, he had one year (365 days) to file his § 2254 habeas corpus petition in this court, unless a properly filed state PCR application tolled that one-year period at any time. *See* 28 U.S.C. § 2244(d)(2). Petitioner had a direct appeal of his criminal conviction pending in the state courts until June 4, 1998.[4] Petitioner then had a properly filed state PCR from June 11, 1998, until August 28, 2001. He then brought a timely § 2254 petition in this court (the 2002 Petition). However, the 2002 Petition was dismissed without prejudice on the recommendation of the Magistrate Judge, as it contained both exhausted and unexhausted claims. Petitioner did not seek to hold the 2002 Petition in abeyance.

Prior to the passage of the AEDPA, the Supreme Court held that a federal district court could not adjudicate a mixed habeas corpus petition. *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). This "total exhaustion" is a requirement for post-AEPDA petitions as well. 28 U.S.C. § 2254(b)(1)(A). In the AEDPA, Congress also adopted a one-year statute of limitations for the filing of

---

[4]The decision of the South Carolina Court of Appeals was issued February 25, 1998. Petitioner then filed a motion for reconsideration, which was denied April 23, 1998. The South Carolina Court of Appeals issued the remittitur on June 4, 1998. The final disposition of a case in South Carolina occurs when the remittitur is returned by the clerk of the appellate court and filed in the lower court. Until that time, the case is deemed pending on appeal. *Christy v. Christy*, 452 S.E.2d 1, 4 (S.C. Ct. App. 1994).

fully-exhausted claims in a federal habeas petition, *id.* § 2244(d), and did not provide for tolling of the limitations period while a mixed habeas petition was pending in federal court, *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). As the Supreme Court recently explained, the combined effect of these provisions has caused difficulties for filers of mixed petitions:

> As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy*'s dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review.

*Rhines v. Weber*, 544 U.S. 269, 275 (2005).

To remedy this problem, the Supreme Court approved in *Rhines* a "stay and abeyance" procedure that district courts could use. *Id.* at 275. Under this procedure, rather than dismissing a mixed petition under *Lundy*, a district court can stay the petition and hold it in abeyance while the petitioner exhausts the unexhausted claims. *Id*. Once all of the claims have been exhausted, the district court can lift the stay and adjudicate the petition. *Id*. The Court recognized, however, that applying the "stay and abeyance" procedure could undermine Congress' design in AEDPA to encourage finality in criminal proceedings and to streamline the federal habeas process. *Id*. at 277. Thus, to obtain a stay of a mixed petition, the petitioner must show that there was "good cause" for failing to exhaust the state remedies, the claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics. *Id*. at 278.

This procedure, however, was approved by the Supreme Court *after* the dismissal of Petitioner's 2002 Petition. Thus, while the Fourth Circuit had indirectly endorsed the "stay and abeyance" procedure at the time Petitioner filed the 2002 Petition, *see Mackall v. Angelone*, 131 F.3d

6

442, 445 (4th Cir. 1997), the dismissal of the 2002 Petition was in compliance with both the *Lundy* directive and the AEDPA's requirements and spirit. However, this court believes that even if Petitioner had moved for a stay of his 2002 Petition, under a *Rhines* analysis, it is unlikely that Judge Houck would have stayed the 2002 Petition. Therefore, this 2006 Petition would still be untimely.

As noted above, to have his 2002 Petition stayed, Petitioner would have had to show "good cause" for failing to exhaust his state remedies, that his unexhausted claims were potentially meritorious, and that he had not engaged in dilatory tactics. *Rhines*, 544 U.S. at 278. While the court assumes for the sake of argument that Petitioner did not engaged in any intentionally dilatory tactics, Petitioner does not meet either of the other *Rhines* requirements. As to "good cause," in his objections to the Report issued in the 2002 Petition, Petitioner provided the conclusory contention that he had exhausted all of the available state court remedies, and that "[a]ll of the [i]ssues in this [a]pplication for federal [h]abeas [r]elief [h]ave been fairly presented[ ] to the State Courts." Petitioner's "Motion for Action upon Report and upon Objections thereto . . ." at 4 (Dkt. #6 in C/A 6:02-261-CWH-WMC, filed Apr. 12, 2002).[5] This information does not provide the requisite "good cause" for Petitioner's failure to present the grounds raised in the 2002 Petition to the state courts during his first PCR application.

Petitioner also cannot show that any of the claims which were deemed "unexhausted" in the 2002 Petition have any merit. The state court analyzed Petitioner's claims in his second PCR application on the merits, presumably in evaluating whether it could determine any reason to allow

---

[5]The court may take judicial notice of the contents of court records. *See Mann v. Peoples First Nat'l Bank & Trust Co.*, 209 F.2d 570, 572 (4th Cir. 1954).

Petitioner's second PCR application to proceed. The second PCR court found that none of the issues raised in Petitioner's second PCR application had any merit,[6] and this court agrees.

**Equitable Tolling**

Petitioner does not discuss in his Objections whether equitable tolling should apply to his circumstance. Under certain circumstances, the statutory time period for filing a § 2254 petition could be subject to equitable tolling. In *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005), the Supreme Court did not directly address whether equitable tolling is applicable to the time limit for filing a § 2254 petition, but noted that "[g]enerally a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418 (citation omitted). The Fourth Circuit has held that the AEDPA's time limit is a statute of limitation, not a jurisdictional bar, and therefore "is subject to equitable tolling, at least in principle." *Harris v. Hutchinson*, 209 F.3d 325, 329-30 (4th Cir. 2000). However, equitable tolling is "reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* at 330.

The court assumes for the purposes of this analysis that Petitioner has been diligent in

---

[6]"A court will sometimes address the merits of a claim that it believes was presented in an untimely way: for instance, where the merits present no difficult issue; where the court wants to give a reviewing court alternative grounds for decision; or where the court wishes to show a prisoner (who may not have a lawyer) that it is not merely a procedural technicality that precluded him from obtaining relief . . . ." *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002); *see also Baker v. Horn*, 383 F.Supp.2d 720, 741 (E.D. Pa .2005) ("Thus, even though the Pennsylvania Supreme Court declined to dispose of Baker's case on the ground that Baker had withdrawn his petition, such treatment does not constitute an implicit ruling that Baker's petition was timely.").

pursuing his rights.[7] Yet Petitioner cannot show some "extraordinary circumstance" prevented him from timely filing the 2006 Petition. The only extenuating circumstance to which Petitioner can point is Judge Houck's delay in dismissing the 2002 Petition, yet because Petitioner cannot meet *Rhines*' requirements of good cause or potentially meritorious claims, this circumstance fails to provide sufficient ground to warrant the application of equitable tolling.[8]

For all the reasons outlined above, Respondent's motion for summary judgment is **granted** and this petition is dismissed with prejudice as it is untimely.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 1, 2007

---

[7]While not relevant to the disposition of this matter, the court notes that Petitioner filed several letters, addressed both to the Clerk and Judge Houck, seeking the status and resolution of the 2002 Petition.

[8]Even if this court were to toll the entire period during which the 2002 Petition was pending before Judge Houck (which it cannot, *see Duncan v. Walker*, 533 U.S. 167, 181-82 (2001)), the statutory one-year filing period under § 2244(d) is tolled only while a properly filed state post-conviction relief motion is pending. 28 U.S.C. § 2244(d)(2). Because Petitioner's second PCR application was deemed successive and untimely, it was not properly filed, and therefore Petitioner's one-year period in which to file his § 2254 petition expired during the time his second PCR application was pending in the state courts. *Pace v. DiGuglielmo*, 544 U.S. 408, 417, (2005) ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2).").